**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number:  **22-02007-eg**

### Order on Objection to Claim

The relief set forth on the following pages, for a total of 12 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**11/15/2022**



Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

Entered: 11/15/2022

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 22-02007-EG |
| Kevin Lamar Gardner, | Chapter 13 |
| Debtor(s). | **ORDER** |

**THIS MATTER** is before the Court on the Objection to Claim[1] that Kevin Lamar Gardner ("Debtor") filed on September 16, 2022, objecting to the proof of claim filed by Lyda Elizabeth Greene ("Greene").[2]  Greene filed a response to the Objection to Claim, and a hearing was held on November 3, 2022.  Debtor, Debtor's counsel, and the Chapter 13 Trustee attended the hearing in person, and Greene appeared telephonically.[3]  Based on the record before the Court and the arguments of the parties at the hearing, the Court makes the following findings of fact and conclusions of law:

### FACTUAL BACKGROUND

Debtor filed for relief under Chapter 13 of the Bankruptcy Code on July 29, 2022 (the "Petition Date") and is represented by counsel.[4]  The Debtor's schedules, attached to his voluntary petition, indicate that the Debtor has assets with an estimated value of $106,104.00, including real estate valued at $77,300.00, and debts totaling $97,585.70.  The Debtor's Schedule D, filed with the petition, listed Greene as holding a liquidated, undisputed secured claim of $5,180.00 from a lawsuit and resulting judgment lien.  Among other secured creditors, the Debtor also is indebted

---

[1] ECF No. 15.
[2] Claim No. 3-1, filed Sept. 2, 2022.
[3] Greene represented on various occasions that she had various disabilities that would make it difficult for her to travel to the Court for a hearing.  Accordingly, the Court extended her the accommodation to appear telephonically.  ECF No. 16.
[4] ECF No. 1.

to U.S. Bank Trust National Association on a mortgage loan encumbering his real estate in the amount of $77,879.00. On July 29, 2022, the Debtor also filed a proposed Chapter 13 plan.[5] Section 3.4 of the proposed plan moved for the avoidance of Greene's judicial lien pursuant to 11 U.S.C. § 522(f) on the basis that, given the estimated value of the real estate and the mortgage encumbering it, Greene's judicial lien impaired the exemptions to which the Debtor would have been otherwise entitled to under 11 U.S.C. § 522(b).

On or about September 2, 2022, the Court received a typed, notarized letter signed by Greene ("Correspondence") regarding the claim she has against the Debtor.[6]  In the Correspondence, Greene alleges the Debtor "admitted that he stole [her] burial insurance payment" and further claims that the Debtor has hidden his assets. Greene further states that she obtained a judgment against the Debtor in Magistrate Court and claims that she is owed approximately $9,000.00. However, Greene asserts that she is uncertain of what is required of her in this matter because she is "ADA certified as reading disabled and require[s] either verbal instructions or need[s] someone to read any correspondence to [her]."[7] Greene's Correspondence was filed on the Debtor's docket and treated as both a proof of claim ("Greene's Claim") and an objection to confirmation of the Debtor's chapter 13 plan.[8]

On September 6, 2022, the Debtor amended his schedules and filed an amended Chapter 13 plan,[9] with a confirmation hearing scheduled for November 3, 2022 – the same date as the hearing on the Objection to Claim. Among other things, the schedules were amended to move Greene's debt from Schedule D to Schedule F, changing her status to that of an unsecured creditor,

---

[5] ECF No. 7.
[6] ECF No. 11.
[7] *Id.* Attached to the Correspondence is a letter signed by a Dr. Alice D'Antoni-Phillips, "Educational Consultant," dated March 21, 1997, describing Greene's limitations. No other exhibits were attached to the correspondence.
[8] ECF No. 11 and Claim Nos. 3-1, filed Sept. 2, 2022.
[9] ECF Nos. 12 and 13.

and claiming that the judicial lien had not attached to his real property due to the inadequate value

of the collateral.  The Debtor also modified the plan to remove the treatment of Greene's Claim as

a judicial lien to be avoided through the plan.[10]

The Debtor then filed the objection to Greene's Claim, which is currently at issue before

the Court.[11]  In the Objection to Claim, the Debtor argues that (1) Greene's Claim does not comply

with Fed. R. Bankr. P. 3001(a) because it does not conform substantially to Official Form 410 in

that it does not sufficiently notify the Debtor of the secured, priority or general unsecured status

of the claim, (2) the claim does not comply with Fed. R. Bankr. P. 3001(c) because it does not

contain an itemized statement of the interest, fees, expenses and charges included in the claim

amount and does not contain supporting documents; (3) while the Debtor admits owing Greene

$5,180.00, Greene's Claim is scheduled in the amended Schedules as unsecured; and (4) Greene's

Claim should not be entitled to any interest and should not be valued above $5,180.00.  The

Objection to Claim attached to it a copy of the Complaint, Summons, Answer and Judgment

relating to the magistrate proceeding that resulted in Greene's judgment lien against the Debtor.

The documents reflected that Greene obtained the judgment against Debtor on August 12, 2020.

All those exhibits were introduced into evidence at the hearing by Debtor's counsel.

On October 8, 2022, Greene filed a response to the Objection to Claim reiterating her prior

assertions that the Debtor sold her a car which was inoperable, and that, in order to pay for the car,

she borrowed money against her burial insurance, which was to be repaid with 8% interest, and

asserted that she paid him $6,100.00 for the vehicle.  The only exhibit attached to the response was

---

[10] The Court notes, however, that generally a judicial lien cannot be avoided by simply changing its status to unsecured when the value of the property on which it attached is lower than the lien.  *See* Fed. R. Bankr. P. 7003(d).
[11] ECF No. 15, filed Sept. 16, 2022.

the same letter previously attached to Greene's Claim, signed by a Dr. Alice D'Antoni-Phillips, evaluating Greene's reading and auditory processing skills disability.

On October 28, 2022, Greene filed an adversary proceeding against Debtor (Adv. Pro. No. 22-80042) in this Court, seeking a determination that Greene's Claim is non-dischargeable pursuant to 11 U.S.C. § 523(a). The complaint attached correspondence from Greene to the Chief of the South Carolina Law Enforcement Division ("SLED") dated August 25, 2022, whereby Greene requested that SLED investigate the Debtor as a result of the Debtor defrauding her by selling her an inoperable vehicle and not returning the money she paid for it.[12] To date, Greene has not paid the filing fee due for the adversary proceeding and has not filed a certificate of service stating that the summons and complaint were served on the Debtor within seven days after the issuance by the Clerk's Office.

At the hearing, Debtor's counsel announced that the Debtor had testified at the meeting of creditors pursuant to 11 U.S.C. § 341 that the value of his real estate was over $110,000 – instead of the $77,300.00 reflected in his original schedules. Accordingly, the Debtor agreed to treat Greene's Claim in the amount of $5,180.00 as a secured claim, entitled to interest at the judgment rate of 7.25% from August 12, 2020 (the day the judgment was obtained) up to July 29, 2022 (the petition date).[13] For the postpetition period, commencing on July 29, 2022, the Debtor agreed to pay interest at the rate of 5.25%, which is the periodic interest rate provided for in SC LBR 3015-

---

[12] The Complaint attaches various United States Postal Service receipts for the correspondence mailed to SLED and for mailings to the Court and the Chapter 13 Trustee's office, some unreadable copies of documents concerning her attempts to execute on the judgment, a copy of the police report made with respect to the incident regarding the inoperable car that the Debtor sold her, and a picture of a man with pins inserted all over his face, which Greene claims was sent to her by the Debtor. None of these documents, however, is in evidence. The Court notes that, even if they had been formally introduced, they would not change the outcome of the Court's decision.

[13] Notably, the deadline for general proofs of claim was October 7, 2022. The claims register reflects that claims totaling $92,910.52 were filed, including the mortgage debt asserted in the amount of $78,583.78 and an IRS priority debt of $645.58.

6.  Debtor's counsel also noted that the Debtor planned to amend his schedules to change the classification of Greene's claim from unsecured to secured and to amend his chapter 13 plan accordingly.

At the hearing, Greene reiterated that the Debtor had sold her an inoperable vehicle and began to make allegations that were incoherent, somewhat incomprehensible, and at times absurd, as to why the amount she is seeking to be paid is greater than $5,180.00.  Among other reasons, she claimed that she incurred costs for copies, mailing, and hiring an Uber to drive her to Debtor's house to seek repayment of the debt.  She also argued that the judgment lien should be paid back at the interest rate of 8% because that is the rate at which she had to borrow funds.[14]  Aside from the arguments made in Court, no evidence was introduced by the Debtor or Greene at the hearing.[15]

## CONCLUSION OF LAW

At the Hearing, the Debtor changed course from the arguments made in his Objection to Claim and announced that he does <u>not</u> dispute that Greene's Claim should be set in the amount of $5,180.00, and that the claim should be treated as a secured claim entitled to interest to be paid through the Chapter 13 plan.  Despite the Debtor's concession, Greene claims that the amount of

---

[14] It is not clear from Greene's pleadings or arguments whether the 8% interest is the amount that she is being charged for the repayment of the loan she took out on her burial insurance to pay for the inoperable vehicle or the interest she is paying on a loan that she subsequently incurred to buy another vehicle.

[15] At the end of the hearing, Greene inquired whether the Court needed receipts for copying costs and postage. Notably, the Court has extended many accommodations to Greene and treated her filed correspondence broadly as objections, responses, and a proof of claim. Delaying the proceeding any further, when the Debtor has agreed to pay the full amount of the judgment with interest, will not be entertained, especially given that Greene has filed correspondence and pleadings including various exhibits, but has not provided any concrete documents or information to date to substantiate her assertions that the claim should be set in an amount greater than $5,180.00 plus interest. To the contrary, Greene's filings have included inconsistent assertions regarding the amount owed.  In the Correspondence, which was treated as her proof of claim, Greene claimed that the amount she is owed is $6,100 plus 8% interest since 2019 in addition to court costs, for a total of *approximately* $9,000.00.  In the response to the Objection to Claim, she only asserts that the Debtor took $6,100 from her.  Greene did attach some receipts to the Complaint filed in the adversary proceeding, some of them appear to be receipts of the postage to send a report of Debtor's actions to the Chief of SLED, others appear to be receipts for postage incurred for mailings to the Court. However, it is not clear exactly what documents were being mailed, and none of this evidence is in the Court's record for purposes of the Objection to Claim. The Court also notes that the Transcript of Judgment allowed into evidence reflects that the total amount of the judgment is $5,180, comprised of $5,100 <u>plus</u> $80.00 for court costs and filing fees.

the claim should be at least $6,100.00 plus interest, and that she should be entitled to costs and charges for which no evidentiary support was provided.  The issues that remain for the Court to decide are twofold: (a) the amount of Greene's Claim and (2) the interest that should apply to the claim.

### *Evidentiary Burden*

Fed. R. Bankr. P. 3001 sets forth the requirements for a valid proof of claim.  *See* Fed. R. Bankr. P. 3001; *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004).  The proof of claim must conform substantially to Official Form 410 and must contain certain supporting information set forth in Rule 3001(c), including, among other requirements:  (1) a claim based on a writing must attach a copy of that writing; (2) if the claim includes pre-petition interest, fees, expenses, or other charges, an itemized statement of those charges must be filed; (3) if a security interest is claimed, evidence that the security interest has been perfected.  *See* Fed. R. Bankr. P. 3001(a), (c), and (d); *see also In re Sherman*, 639 B.R. 618, 622 (Bankr. D.N.M. 2022) (summarizing requirements of Fed. R. Bankr. P. 3001 for a proof of claim to be valid and constitute *prima facie* evidence of the validity and amount).

If all the requirements set forth in Fed. R. Bankr. P. 3001 are met, the proof of claim is *prima facie* evidence of the validity and amount of the claim.  Fed. R. Bankr. P. 3001(f); *In re Harford Sands Inc*., 372 F.3d at 640.  If the requirements are not met, however, the proof of claim does not constitute *prima facie* evidence of the claim's validity and amount, and the burden is on the claimant—in this case Greene—to establish the validity and amount of the claim.  *See In re Travers*, 635 B.R. 273, 279 (Bankr. D.S.C. 2021); *In re Devey*, 590 B.R. at 721 ("If the proof of claim, as filed, does not qualify as *prima facie* evidence as to validity and amount, then the evidentiary burden of proof never shifts from the claimant to the objecting party.  To challenge the

allowance of the claim pursuant to § 502(b), the objecting party need only file an objection pursuant to the applicable rules.").

### *Amount of Greene's Claim*

Greene's Claim—a letter with no exhibits or attachments in support of the claim (aside from a doctor's note regarding Greene's disability)—does not constitute *prima facie* evidence of her claim. To be clear, the parties agree that the Debtor owes Greene the judgment awarded by the magistrate court in the amount of $5,180.00 and that Greene's claim is secured. Greene, however, asserts that the claim should be in an amount greater than $5,180.00 – but it is not clear from the record before the Court the precise amount she asserts is owed. At the hearing and in the documents filed with the Court, she asserts that her claim should be $6,100.00 plus 8% interest or even as high as $9,000, when including the mailing costs and other expenses in pursuing the claim. No evidence has been presented to warrant such an amount; accordingly, the Court finds that the base amount of the claim should be the amount of the judgment lien of $5,180.00.

### *Interest Rate on Greene's Claim*

The second issue before the Court is the applicable interest rate. The Debtor asserts an interest rate of 7.25%—the current judgment interest rate under South Carolina law—for the period from the date the judgment was entered until the Petition Date. After the Petition Date, the Debtor claims that interest on the judgment lien should accrue at the interest rate of 5.25%. An analysis of this issue is based on the interplay between 11 U.S.C. § 502(b)(2), 11 U.S.C. § 506(b), 11 U.S.C. § 1322(b)(2), 11 U.S.C. §1325(a)(5)(B), and S.C. Code Ann. § 34-31-20(B).

The general rule is that interest stops accruing on prepetition claims at the commencement of the bankruptcy case, and that the prepetition interest is that which is provided under the applicable agreement or non-bankruptcy law. *See* 11 U.S.C. § 502(b); *In re Gianasmidis,* 601 B.R.

558, 567 (Bankr. D. Mass. 2019); *In re Chang*, 274 B.R. 295, 302 (Bankr. D. Mass. 2002); *see also In re Tumminia*, C/A No. 17-03973-jw, slip op. (Bankr. D.S.C. Dec. 18, 2017). Section 506(b) provides an exception to the general rule that a creditor is not entitled to interest on its claim once the bankruptcy petition is filed. More specifically, it provides:

> To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). Accordingly, an oversecured creditor is allowed interest on its claim whether the lien arose voluntarily or by operation of law. *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989); *In re Chang,* 274 B.R at 303. The Bankruptcy Code, however, does not clarify the interest rate to which an oversecured creditor is entitled. Where there is a contract rate, most courts have awarded interest that accrues from the date of the petition until confirmation ("pendency interest") at the rate specified in the contract; but absent that, courts usually look to applicable non-bankruptcy law, including state law. *In re Gianasmidis*, 601 B.R. 567-68; *see also Bate Land Co. LP v. Bate Land & Timber LLC (In re Bate Land & Timber LLC)*, 877 F.3d 188, 199 (4th Cir. 2017) (ruling that pendency interest may be determined based on equitable considerations); *In re DeMaggio*, 175 B.R. 144, 148 (Bankr. D.N.H. 1994) (noting that a bankruptcy court "may exercise some degree of discretion in determining the appropriate rate of postpetition interest on an oversecured claim.").

Under South Carolina law, the legal rate of interest on money decrees and judgments "is equal to the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year *for which the damages are awarded*, plus four percent points, compounded annually." S.C. Code Ann. § 34-31-20(B) (emphasis added). As required by the statute, the South

Carolina Supreme Court issues an order by January 15th of each year confirming the legal rate of interest for judgments and money decrees.  For the period from January 15, 2020 through January 14, 2021, the South Carolina Supreme Court set the legal rate of interest for judgments and money decrees at 8.75%, compounded annually. *Order re: Interest Rate on Money Decrees and Judgments* (S.C. Jan. 6, 2020).[16]. Based on the language of § 34-31-20(B), it appears that the applicable statutory interest rate would remain the same for the duration of the judgment and would not adjust annually. S.C. Code Ann. § 34-31-20(B) (stating that the interest rate is "equal to the prime rate … for each calendar year for which the damages are awarded"); *see Calhoun v. Calhoun,* 529 S.E. 2d 14, 19 (S.C. 2000) ("[W]hen a money judgment is finalized…the interest on that amount, whether it has been modified upward or downward or remains the same, runs from the date of the original judgment.").

Here, there is no dispute that Greene is an oversecured creditor.  The Debtor, however, claims that the pendency interest should accrue at the rate of 5.25% because that is the periodic interest rate that the Court has established.  *See* SC LBR 3015-6; Amended Operating Order 21-01 ("An interest rate (Periodic Interest Rate) of five and one-quarter (5.25%) percent *per annum* applied to a secured claim in a chapter 13 case will be presumed—for plan confirmation purposes—to be reasonable, effective for cases filed on or after January 18, 2021.").  The Periodic Interest Rate deals with interest to be applied under the plan.  *See In re Tumminia*, C/A No. 17-03973-jw, slip op. at 9 n. 13.

The issue regarding the post-confirmation interest that applies to claims is more complicated.  As courts have found, section 506(b) establishes the amount of the claim on the date of confirmation, but not the post-confirmation interest rate that accrues on the claim.  *In re*

---

[16] https://www.sccourts.org/courtOrders/displayOrder.cfm?orderNo=2020-01-06-01.

*Stringer*, 508 B.R. 668, 672 (Bankr. N.D. Miss. 2014); *In re Tumminia*, C/A No. 17-03973-jw,

slip op. at 8.  Section 1322(b)(2) provides that the plan <u>may</u> "modify the rights of holders of secured

claims, other than a claim secured only by a security interest in real property that is the debtor's

principal residence".[17]  Furthermore, 11 U.S.C. § 1325 of the Bankruptcy Code sets forth the

requirements for confirmation of a chapter 13 plan.  Specifically, 11 U.S.C. § 1325(a)(5) sets forth

the possible treatments for a secured debt: (a) the creditor may consent to its treatment under the

plan; (b) the debtor may surrender the collateral, or (c) the debtor may "cram down" the debt,

whereby the creditor receives a distribution of property over the life of the plan with a present

value of not less than the allowed amount of its secured claim.  A creditor is deemed to receive

"present value" of its claim if the total amount of the deferred payments includes the amount of

the underlying claim plus an appropriate amount of interest to compensate the creditor for the

delayed payments.  *See Rake v. Wade*, 508 U.S. 464, 468 (1993).  Thus, "[a]fter confirmation, the

interest paid [on a claim] is designed to preserve the present value of the [creditor's claim] and

must be provided pursuant to § 1325(a)(5)(B), and calculated as instructed by the Supreme Court

in *Till v. SCS Credit Corporation*, 541 U.S. 465 (2004)).  In *Till*, the Supreme Court held that that

the appropriate method for determining the adequate rate of interest to be paid on a crammed down

secured claims under § 1325(a)(5)(B) is to use a "prime-plus" formula, calculated using the current

national prime rate of interest plus a risk adjustment.[18]

---

[17] A "security interest" is defined by the Bankruptcy Code as "a lien created by an agreement."  11 U.S.C. § 101(51).
Courts considering whether nonconsensual liens, such as statutory liens or judgment liens, constitute "security
interests" for purposes of the anti-modification provision of 11 U.S.C. § 1322(b)(2) have held that those liens are not
"security interests" because they did not arise from a consensual or voluntary agreement.  *See Rankin v. DeSarno*, 89
F.3d 1123, 1127 (3rd Cir. 1996); *see also In re Harko*, 211 B.R. 116 (2d Cir. B.A.P. 1997) (stating that "[t]he language
of [§ 1322(b)(2)] is plain and the legislative history indicates the exception to the general rule that the rights of holders
of secured claims may be modified in a chapter 13 plan to be a very narrow one *limited only to the rights of the
mortgagee of the debtor's principal residence*.") (emphasis added).
[18] The "prime-plus" formula is usually assumed to be the prime rate plus a risk adjustment percentage of 1-3%. *See
Till,* 541 U.S. at 466 (noting that other courts generally approve a risk adjustment of between 1 and 3 percent); *In re*

As set forth above, Operating Order 21-01 establishes 5.25% as the effective Periodic Interest Rate to be paid to secured creditors in chapter 13 cases. The presumption exists that the Periodic Interest Rate is reasonable for purposes of plan confirmation, but it is rebuttable. *See* SC LBR 3015-6(b). To the extent a creditor wishes to challenge the Periodic Interest Rate, the creditor must file a timely objection, and the Court will conduct a hearing to determine the appropriate interest rate using the methodology set forth in *Till*.

The issue of determining the post-confirmation interest rate, however, is premature as the current plan does not treat the Greene Claim as secured, an amended plan has yet to be filed, it is not clear what interest rate the Debtor will propose in the amended plan, and it is not clear whether Greene will have a further objection to such amended plan.

**IT IS THEREFORE, ORDERED THAT**

**1.**    Greene holds a secured claim in the amount of $5,180.00, plus accrued interest at the applicable judgment rate of 8.75%, compounded annually, from August 12, 2020 through the date of confirmation of the Debtor's chapter 13 plan; and

**2.**    The Debtor shall file an amended chapter 13 plan to provide treatment of Greene's secured claim in accordance with this Order within ten (10) days.

**AND IT IS SO ORDERED.**

---

*Sanders,* 521 B.R. 739, 744 (Bankr. D.S.C. 2014) (finding that the presumed effective interest rate of 5.25% (the prime rate plus 2%) under SC LBR 3015-6 and applicable Operating Order provides the present value of secured claims as required by 11 U.S.C. § 1325(a)(5)(B)(ii)); *In re Johnson,* 438 B.R. 854, 859 (Bankr. D.S.C. 2010) (finding that the prime rate plus 2% risk adjustment for a total of 5.25% was reasonable). Notably, the prime interest rate was recently raised to 7% as of November 3, 2022. *See* fedprimerate.com.